VILLAGE OF OAKWOOD, APPELLEE, *v.* MAKAR ET AL., APPELLANTS.

(No. 45744—Decided July 11, 1983.)

*Mr. Joseph W. Diemert, Jr.,* for appellee.

*Guerin Avery & Associates* and *Mr. Guerin L. Avery,* for appellants.

PRYATEL, J. This appeal involves a judgment rendered in favor of the village of Oakwood, as well as a judgment rendered in favor of the third-party defendant, Mayor John G. Haba, on his cross-claim against appellant. For the following reasons we affirm in part and reverse in part.

Defendant-appellant Mary Makar was Clerk of the Mayor's Court for the village of Oakwood from October 1970 to June 1978. The State Auditor conducted an audit for the years 1974 through 1978. It was determined that the mayor's court was deficient in the amount of $12,965.15. Makar subsequently paid $6,500 to the municipality, resulting in a deficit balance of $6,465.15.

According to Makar, she and Mayor John G. Haba each agreed to pay half of the shortage, and that Makar would take full responsibility for the shortage to protect the mayor from political harm. Haba denied that such an agreement existed. A letter in the record, dated June 15, 1978 and signed by Makar, admits her responsibility for the shortages. The letter also acknowledges her duty to replace the funds, but expressly denies that she took them or had knowledge of who stole them.

The village of Oakwood filed an action against Makar for the remaining $6,465.15, as well as for attorney fees, and for the cost of the audit. As a third-party plaintiff, Makar cross-claimed against Haba and his finance director. Makar alleged that Haba had neglected to provide her with proper training and that his finance director had failed to give her

adequate supervision, resulting in accounting discrepancies found by the auditor. She further claimed that Haba removed money from the mayor's court account on several occasions for his own personal use. Also she alleged that Haba breached his agreement to pay for half ($6,500) of the shortage. The third-party defendants then filed a counterclaim against Makar for defamation.

The trial court found Makar responsible for the remaining deficiency of $6,465.15. It also gave the village $15,000 in attorney fees and $2,900 toward the cost of the audit. It further decided in favor of Haba and against Makar on the defamation claim by awarding Haba $10,000.

Makar has appealed this judgment and has assigned six errors:

Assignment of Error No. I

"I. The trial court erred in finding for third-party defendant, John G. Haba, and against third-party plaintiff, Mary D. Makar, in the sum of ten thousand dollars ($10,000) plus costs in that the court lacked jurisdiction to hear the matter as the case for the counterclaim was abated by death."

Makar died after the pleadings were filed but before the trial commenced. The court substituted her husband and executor, Frank Makar, as party defendant. Appellant argues that an action for slander is abated by the death of either party, and that the court therefore lacked jurisdiction to hear the action for defamation filed by Haba. We find merit in this argument.

The law on abatement is governed by R.C. 2311.21,[1] which provides that an action for slander abates by the death of either party. The Ohio Supreme Court has held that an action for slander is abated by the death of the defendant. *Billingsley* v. *Townsend* (1937), 132 Ohio St. 603 [9 O.O. 8]. This court has recently ruled that an action which abates under R.C. 2311.21 can be reinstated against the decedent's personal representative only if the cause of action survives death. *Flynn* v. *Relic* (June 26, 1980), Cuyahoga App. No. 41404, unreported, citing *Joyce* v. *Columbus* (App. 1936), 21 Ohio Law Abs. 649.

R.C. 2305.21 determines those causes of action that survive. That statute provides as follows:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto."

A cause of action for slander did not survive at common law. *Joyce, supra,* citing *Long* v. *Hitchcock* (1827), 3 Ohio 274. In order for an action to survive under R.C. 2305.21, the action must be one for "injuries to the person," and that term means physical injuries. *Joyce, supra.* This court has ruled that an action for slander is not an action for "injuries to the person"; therefore, it does not survive the death of either party. Hence a plaintiff may not commence a new action against a deceased defendant by substituting the deceased's executor as a party. *Joyce, supra.* The trial court was without jurisdiction to hear the cause of action. Since the question of subject matter jurisdiction can be raised at any time, we reach this conclusion notwithstanding that appellant never raised this issue with the lower court.

---

[1] R.C. 2311.21 provides as follows:

"Unless otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both of the parties thereto, except actions for libel, slander, malicious prosecution, for a nuisance, or against a judge of a county court for misconduct in office, which shall abate by the death of either party."

Appellant's first assignment of error is well-taken and that portion of the judgment granting damages for defamation is reversed, and final judgment is granted to appellant.

Assignment of Error No. II

"II. The trial court erred in finding for third-party defendant, John G. Haba, and against third-party plaintiff, Mary D. Makar, on a cross-claim in that no defamatory statements were made directly against Haba by Makar."

Under the first assignment of error, we found that the cause of action for slander was abated by Makar's death; thus, that action should have been dismissed for lack of jurisdiction. While that ruling renders moot the second assignment of error, we note in passing that there was no evidence in the record of any actionable defamatory statements made by Makar. The only statements concerning Haba made by Makar were spoken to her husband. Communication to one's spouse is not sufficient publication. *Romer* v. *Portnick* (1974), 78 Misc. 2d 404, 356 N.Y.Supp. 2d 424. The only other evidence of Makar accusing Haba of possible embezzlement were statements made in her answer and in her counterclaim. Statements made by parties to litigation, if pertinent to the case, are absolutely privileged, whether made in the pleadings, affidavits or in open court. Prosser, Law of Torts (4 Ed. 1971) 778, Section 114. We agree with appellant that the trial court erred in finding for Haba on the defamation claim apart from our ruling on Assignment of Error No. I.

Assignment of Error No. III

"III. The trial court erred in its improper application of Evidentiary Rule 615 in enforcing a separation of witnesses order against an expert witness on behalf of the defendant, Mary Makar, and in permitting testimony of two witnesses of the plaintiff and the third-party defendant who had violated the separation of witness order."

Appellant first argues that the court erred in not permitting her expert on polygraph examinations to remain in the courtroom after an order for separation of witnesses. We disagree. The separation of witnesses, including expert witnesses, is a matter within the discretion of the trial court. *Euclid* v. *Fitzthum* (1976), 48 Ohio App. 2d 297 [2 O.O.3d 442]. Appellant failed to show how a polygraph expert would be essential to the presentation of her case. See Evid. R. 615, *infra.* Thus, there is no evidence in the record that the trial court abused its discretion in not permitting the polygraph expert to remain.

Second, appellant argues that the trial court erred in allowing Lt. Spera to remain at plaintiff's counsel's table during the trial and in then allowing Spera to testify. We again find no abuse of discretion by the trial court. Evid. R. 615[2] expressly declines to authorize exclusion of an officer or employee of a party who is not a natural person. The village of Oakwood is not a natural person, and the court recognized Spera as an officer of the village.

Appellant finally contends that the trial court also erred in allowing Hart to testify after he had remained in the courtroom during the entire trial. Evid. R. 615 also allows a witness to remain in the courtroom if his or her presence is shown by a party to be essential to the presentation of the case. Appellee demonstrated

---

[2] Evid. R. 615 provides as follows:

"At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."

that Hart supervised the audit that was the subject of a significant amount of the testimony; therefore, the court did not err in finding Hart to be essential in the presentation of the village's cause.

The third assignment of error is without merit.

Assignment of Error No. IV

"IV. The trial court erred to the prejudice of the defendant, Mary Makar, in finding that the plaintiff, village of Oakwood, was entitled to an award of attorney's fees while finding that plaintiff was not entitled to an award of punitive damages, and in awarding attorney's fees in the amount of fifteen thousand dollars ($15,000.00) where plaintiffs proved that they had incurred a lesser amount of attorney's fees and had not proved the reasonableness of any of their attorney's fees."

Appellant first argues that the trial court erred in awarding attorney fees. We agree. Appellant contends that, in the absence of statutory authorization, attorney fees may only be awarded when punitive damages are also given. However, the current rule in Ohio is that the prevailing party may be entitled to attorney fees if the other party is found to have acted in bad faith, *State, ex rel. Crockett,* v. *Robinson* (1981), 67 Ohio St. 2d 363, at 369 [21 O.O.3d 228]; *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177 [75 O.O.2d 224]; or has acted vexatiously, wantonly, obdurately or for oppressive reasons. *Sorin, supra.* Punitive damages are often awarded as well as attorney fees when one of the above conditions is shown. It does not necessarily follow that punitive damages must be awarded before a court can award attorney fees. This court has ruled that attorney fees may be granted to the prevailing party when punitive damages are properly *awardable, Johnson* v. *Minardo* (Oct. 15, 1981), Cuyahoga App. No. 43610, unreported. We have found no case law holding that punitive damages must actually be *awarded* prior to the granting of attorney fees. In *Johnson, supra,* the trial court specifically stated that punitive damages were not awardable under the facts of that case.

In the case at bar, there was no express finding that appellant acted in bad faith, or acted vexatiously, wantonly, obdurately or for oppressive reasons. The record indicates that appellant was not trained in bookkeeping and that other people also had access to the money in the safe. Indeed, the mayor admitted borrowing money from the safe for court purposes. No formal accounting procedure, such as the use of expense vouchers, was followed in borrowing these funds. Without a showing of fraudulent purposes on the part of appellant, the award of attorney fees is unwarranted.

Appellant also argues that appellee failed to introduce evidence that the legal fees were necessary and reasonable. In light of our conclusions above that no attorney fees should have been awarded, the question as to whether the fees were shown to be reasonable is moot. However, in passing we find merit in this part of appellant's argument. The record must demonstrate facts upon which the reasonableness of the fees may be judged. *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85 [2 O.O.3d 65]. In the case at bar, there was testimony stating that appellee's attorney charged $30 an hour. The only other evidence on the subject of attorney fees were four bills, none of which was itemized. In *Swanson,* we ruled that attorney fees may not be determined solely by multiplying the number of hours worked by the hourly fee. The court must consider a number of factors, including the skill required in the particular case, the time and labor required, the novelty of the questions involved, and the reputation and experience of the attorney. In the present case the trial court gave no indication as to how it arrived at the $15,000 figure. Even if the figure was reached on the basis of the bills attached to the

record, the sum of these bills does not exceed $11,000.

Appellee argues that because appellant stipulated as to the validity of the bills, appellee was not required to show reasonableness of the fees. We disagree. Appellant's stipulation merely indicated that the bills were the ones actually sent to the village by its counsel. Appellant did not stipulate as to the amount of reasonable attorney fees. This assignment of error is well-taken and the judgment awarding attorney fees is reversed, and final judgment is rendered in favor of appellant on the granting of those fees.

Assignment of Error No. V

"V. The evidence presented by plaintiff as to the amount of loss was contradictory and the court erred in granting recovery to plaintiff."

Appellant argues that, because there are some discrepancies in the testimony of the witnesses, the court erred in finding for the appellee in the amount awarded. The credibility of witnesses and the weight to be given to their testimony are issues for the trier of fact. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by an appellate court as against the weight of the evidence. *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. There was evidence in the record to support a finding that the total amount of the loss was $12,965.15. Thus, the judgment for the unpaid balance of this loss, $6,465.15, was proper. This assignment of error is without merit.

Assignment of Error No. VI

"VI. The trial court erred in consistently refusing to allow the questioning of the financial status of John G. Haba even though the auditor's findings were against Haba and the defendant and evidence introduced by plaintiff tended to indicate Haba's potential involvement."

Evidence is not relevant unless it has a tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid. R. 401. Evidence which is not relevant is inadmissible. Evid. R. 402. Testimony regarding Haba's financial status would not have made any fact of consequence more or less probable. The proffered testimony merely listed the mayor's gross income for the years 1974 through 1977, and some expensive purchases made by him during that period. There was no evidence of other resources or lack of them, that may have accounted for these purchases. Furthermore, appellant cited no authority for the contention that one's financial status, standing alone, is admissible to prove embezzlement. This assignment of error is overruled.

The case is affirmed in part and is reversed in part. We affirm the judgment awarding the unpaid balance of the loss. We reverse and grant final judgment for appellant on both the defamation claim and the award of attorney fees. We did not review the award for the State Auditor's fees since no claim of error was assigned; therefore, that part of the judgment remains as granted by the trial court.

*Judgment affirmed in part and reversed in part.*

NAHRA, P.J., and ANN MCMANAMON, J., concur.